**SEALED**

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

FILED

2012 MAY 10  P 2: 26

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* | § | **Filed in Camera** |
| LESLIE COLEMAN | § | **and Under Seal** |
| | § | **Pursuant to 31 U.S.C. § 3730(B)(2)** |
| | § | |
| Plaintiff and Relator, | § | |
| | § | **SA12CA0459FB** |
| v. | § | **CIVIL ACTION NO. _____** |
| | § | |
| KAPLAN, INC.; THE WASHINGTON | § | **Do Not Enter on PACER/ECF** |
| POST COMPANY; KAPLAN HIGHER | § | **Do Not Serve Defendants** |
| EDUCATION CORPORATION; | § | **Do Not Place in Press Box** |
| KAPLAN COLLEGE –SAN ANTONIO | § | |
| (SAN PEDRO); and KAPLAN | § | |
| COLLEGE—SAN ANTONIO (INGRAM) | § | |
| | § | |
| Defendants. | § | |

## ORIGINAL COMPLAINT

Relator, Leslie Coleman, brings this *qui tam* suit under the False Claims Act on behalf of

the real party in interest, the United States of America, and, in support, respectfully shows the

Court as follows:

### INTRODUCTION

1.      This is an action to recover money, used by the federal Government under Title

IV of the Higher Education Act to provide financial assistance to students enrolled in post-

secondary vocational programs, fraudulently demanded, received, and retained by Defendants in

violation of the False Claims Act.  Defendants received millions of dollars in Title IV funds that

were paid for courses taught by sham instructors who did not meet legally imposed minimum

instructor qualifications to teach such courses.  Despite knowing the instructors were unqualified,

Defendants never informed its students nor returned the ill-gotten Title IV bounty.

## PARTIES

2.    Relator, Leslie Coleman, is a resident of Texas and a United States citizen. Ms. Coleman was previously employed by Defendant Kaplan Higher Education Corporation ("KHEC") as a Medical Practice Management Program Director at its main campus in San Antonio (the "San Pedro Campus") from August 2009 until February 2011 and has continuously been employed by KHEC since February 2011 as an Assistant Director of Education at its branch campus located in San Antonio, Texas (the "Ingram Campus").

3.    KHEC is a Delaware corporation with its principal office located at 225 West Wacker Drive, Suite 600, Chicago, Illinois 60606. KHEC operates proprietary, post-secondary vocational schools on over 60 campuses across the United States, including the San Pedro Campus and the Ingram Campus located in San Antonio, Texas. KHEC is a subsidiary of Defendant Kaplan, Inc., which is a subsidiary of Defendant The Washington Post Company.

## JURISDICTION AND VENUE

4.    This is an action brought pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* This federal Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 31 U.S.C. § 3732, the latter of which specifically confers original jurisdiction on this Court for actions brought pursuant to 31 U.S.C. § 3730. This Court has personal jurisdiction over the Defendants under 31 U.S.C. § 3732(a), which authorizes nationwide service of process, and because the Defendants can be found in and transact the business that is the subject matter of this action in the Western District of Texas.

5.    Venue is proper in the United States District Court for the Western District of Texas pursuant to 28 U.S.C. § 1391(b) and (c) and 31 U.S.C. § 3732 (a) because KHEC

maintains and operates a traditional primary campus and branch campus within this district and many of the acts that form the basis of this action occurred in the Western District of Texas.

6.      This case is not based on a "public disclosure", but rather is based on the knowledge of Realtor Leslie Coleman, an "original source", as those terms are defined in 31 U.S.C. § 3730.

7.      This Complaint has been filed under seal pursuant to 31 U.S.C. § 3730 and shall remain under seal for at least sixty days and until the Court so orders.

8.      A copy of this Complaint has been served on the United States Attorney General and the United States Attorney for the Western District of Texas.

9.      All conditions precedent required by 31 U.S.C. § 3730 have occurred.

## FACTUAL BACKGROUND

## I.    KHEC EMPLOYS SHAM INSTRUCTORS AND REAPS TITLE IV FUNDS.

10.     KHEC states in its 2009-2011 Institution Catalog that it is "proud of its carefully selected staff and faculty members".  One of KHEC's "carefully selected" faculty members, L.S., claimed to be a Registered Nurse and Emergency Medical Technician, with a Masters Degree in Nursing and Bachelor of Science Degree in Nursing.  L.S. taught hundreds of aspiring medical assistants in courses covering disease processes, diagnosis, evaluations, treatments, and prognosis within KHEC's Medical Assistant diploma program.

11.     The then Chairman and Chief Executive Officer of Defendant Kaplan, Inc., Andrew S. Rosen, personally verified in KHEC's 2009-2011 Institution Catalog that the information contained therein was true and correct—including that L.S. was a Registered Nurse and Emergency Medical Technician.  Further, KHEC's Director of Education for its Ingram Campus certified to the Texas Workforce Commission that she had "carefully reviewed and verified the qualifications of [L.S.] and [L.S.'s] statements contained in [his] application."

3

12.     These representations and certifications were false and fraudulent.  KHEC had not "carefully selected" L.S. nor verified his qualifications.  In fact, L.S. held no degree whatsoever, had never been a Registered Nurse or Emergency Medical Technician, and had no practical experience in the medical assisting field.  L.S. did not meet even the minimum qualification requirements imposed by law to teach courses in the Medical Assistant program.

13.     Nonetheless, despite KHEC's knowledge of, or at least reckless disregard for, the fact that L.S. was unqualified as a matter of law, KHEC charged its students tuition for courses taught by L.S. and received funds from the federal Government to pay tuition for such courses under Title IV of Higher Education Act.  KHEC's demands for and receipt of payment made under these false pretenses is a violation of the False Claims Act, as amended in 2009.

14.     After the fraud was exposed internally by its employees, KHEC made a concerted effort to keep the fraud secret.  KHEC notified neither the authorities nor its students, who had received funds from the federal Government to pay for services they did not receive.  The highest levels of KHEC management knew of this fraud, but made a calculated decision to keep the ill-gotten gains received under Title IV of Higher Education Act.  KHEC's failure to refund such money is yet a further violation of the False Claims Act, as amended in 2009.

15.     This was not an isolated incident.  KHEC has hired numerous people who do not possess the minimum qualifications required under the law to teach courses in its Medical Assistant program, as well as in its other programs.  What is more, KHEC knew or should have known, based on its instructors' applications, that the instructors were not qualified by law to teach such courses, or else failed to conduct an investigation and actually verify the instructors' qualifications, which, as in the case of L.S., were fabricated.  Either way, KHEC wrongfully

demanded, received, and failed to refund money under Title IV of the Higher Education Act used to pay students' tuition for courses taught by unqualified instructors.

## II. THE DEPARTMENT OF EDUCATION PROVIDES FINANCIAL AID TO ELIGIBLE INSTITUTIONS FOR ENROLLED STUDENTS.

16.    Pursuant to Title IV of the Higher Education Act of 1965 ("Title IV"), 20 U.S.C. §§ 1070 *et seq.*, the Department of Education ("DOE") provides financial assistance in the form of grants, loans, loan guarantees and interest subsidies to help defray the costs of education for eligible students enrolled in qualifying post-secondary institutions.

17.    To be eligible to participate in Title IV programs, an institution must enter into a program participation agreement ("PPA") with the DOE.   Under the PPA, the institution certifies, among other things, that it will comply with all statutory provisions applicable to Title IV (including state licensure requirements), that it will provide information pertaining to its administrative and financial responsibilities to the DOE and the State regulatory bodies, and that it will comply with all its financial obligations, including refunds that it is required to make.

18.    Participation in Title IV programs also is conditioned upon an institution being legally authorized to provide a post-secondary education program in the State in which the institution is physically located and complying with all state approval and licensure requirements.   34 C.F.R. §§ 600.5 and 600.9.   The DOE relies upon state licensing and regulatory agencies, along with authorized accrediting agencies, to ensure the integrity and quality of education offered by institutions participating in Title IV programs.

19.    The financial assistance programs under Title IV include the Federal Pell Grant Program, 20 U.S.C. §§ 1070a *et seq.*, 34 C.F.R. § 690; the Federal Family Education Loan Program, 20 U.S.C. §§ 1071 *et seq.*, 34 C.F.R. § 682 (which includes the Federal Stafford Loan Program); the Federal Direct Student Loan Program, 20 U.S.C. §§ 1087a *et seq.*, 34 C.F.R. §

685; the Federal Perkins Loan Program, 20 U.S.C. § 1087aa *et seq.*, 34 C.F.R. § 674; the Federal Work Study Program, 42 U.S.C. 2751 *et seq.*, 34 C.F.R. § 675; and the Federal Supplemental Educational Opportunity Grant Program, 20 U.S.C. §§ 1070b *et seq.*, 34 C.F.R. § 676.

20.    Funds provided by the DOE to advance some Title IV programs are paid to and administered by eligible institutions for students enrolled in their programs. Eligible institutions make claims for and receive payment of those funds in various ways.

21.    Under the Pell Grant program, for example, a student submits a request for funding directly to the DOE and the institution certifies that the student is enrolled in an eligible program and that grant payments will be made in accordance with applicable statues, regulations and instructions. Assuming the student qualifies, the institution may seek to receive Pell Grant funds in advance of disbursement to the student or seek to be reimbursed for funds advanced by the institution to the student. In either event, the DOE pays the institution by electronic funds transfer to the institution's account, which funds are then credited to the student's account. If, however, the Pell Grant funds are not earned due to overpayment or the student fails to complete the payment period, for example, the institution must refund to the DOE payments already received and cannot seek reimbursement. 34 C.F.R. §§ 690.75 and 690.79.

22.    As another example, under the Federal Direct Student Loan program, a student submits a Free Application for Federal Student Aid and the institution certifies that the student is enrolled in an eligible program and that loan payments will be made in accordance with applicable statues, regulations and instructions. Assuming the student qualifies, the institution originates the loan and draws down on the loan directly from the DOE or through a servicer, which funds are credited to the student's account. Any refund due the student from the institution is required to be refunded by the institution directly to the DOE. 34 C.F.R. § 685.306.

## III.  INSTITUTIONS IN TEXAS ARE REQUIRED TO REFUND TUITION FOR COURSES TAUGHT BY UNQUALIFIED INSTRUCTORS.

23.    In Texas, proprietary schools of higher education are licensed and regulated by the Texas Workforce Commission ("TWC").  To operate in Texas, an institution must obtain an initial Certificate of Approval from the TWC, which is valid for one year.  Thereafter, the institution must yearly submit an Application for Renewal of Certificate of Authority ("ARCA").  The ARCA is a relatively short, one page application.  But, a material portion of the ARCA requires the institution's director and owner to certify that they have carefully read Chapter 132, Texas Education Code and Texas Workforce Commission Rules and to specifically certify that the institution is in compliance with Texas laws regarding student refunds.

24.    Institutions licensed to operate in Texas are required to provide courses taught by instructors that possess minimum qualifications relevant to the courses taught.  For example, an instructor that has a certificate of completion for a 900-clock hour vocational program, must have four years of practical experience, within ten years immediately preceding employment with the school, in the course to be taught.  The very minimum qualification requires an instructor to possess a high school diploma or its equivalent and at least five years practical experience, within ten years immediately preceding employment with the school, in the course to be taught.  Institutions are required to verify, on forms approved by the TWC and maintained by the institution, each instructor's qualifications according to state qualification requirements.  Importantly, institutions are required to refund tuition for courses attended if the instructors do not posses the minimum qualifications to teach such courses.  40 Tex. Admin. Code § 807.263.

## IV.  KHEC OPERATES IN TEXAS AND RECEIVES TITLE IV FUNDS.

25.     KHEC is a proprietary institution of higher education.  At all relevant times, KHEC was subject to a PPA it entered into with the DOE and had submitted multiple ARCA's to the TWC certifying compliance with Texas law regarding tuition refunds.

26.     KHEC offers career-focused diploma programs in several vocational fields.  The programs often involve a classroom, or didactic, portion and a field training, or externship, program.  KHEC offers a program at both its Ingram Campus and San Pedro Campus that leads to a diploma in the medical assistant field.  The Medical Assistant program was designed to train students for an entry level job in a clinical medical setting.  The duties of such jobs include aiding physicians in their clinical practice (such as interviewing patients and recording medical histories, examining and recording patients' vital signs, and administering electrocardiograms, performing injections, applying bandages, and taking x-rays) and back office functions (such as maintaining medical records, bookkeeping, scheduling, and answering phones).  Most medical assistants work in doctor's offices, medical clinics, and hospitals.

27.     The Medical Assistant program consists of two parts.  First, KHEC provides classroom training on campus, which is comprised of seven courses: AHK 102 (Allied Health Industry & Fundamentals); AHW 102 (Allied Health Careers & Communication); MAG 150 (Musculoskeletal, Digestive & Respiratory); MAP 150 (Nervous, Sensory & Endocrine); MAR 150 (Circulatory, Immune & Lymphatic); and MAY 150 (Integumentary, Urinary & Reproductive); and MAB 150 (Medical Front Office).  These courses are taken one at a time and the length of each course is approximately four weeks.  Second, KHEC provides an externship, MAX 150 (Medical Assistant Externship), for the purposes of field training students in a clinical setting off-campus.  The length of the externship is 160 hours.

28.    KHEC participates in multiple Title IV programs, and the vast majority of students who enrolled in the Medical Assistant program receive some form of student financial aid under Title IV. KHEC currently charges $16,189.00 in tuition and fees for its Medical Assistant diploma program.  During the 2009-2010 school year, KHEC received over $200 million from the DOE through the Pell Grant program alone.

## V.    KHEC DOES NOT VERIFY INSTRUCTOR QUALIFICATIONS AND EMPLOYS UNQUALIFIED INSTRUCTORS.

29.    Relator worked at both KHEC's San Pedro Campus and Ingram Campus.  During her tenure with KHEC, Relator has discovered that numerous instructors at both campuses lacked even the most basic credentials required by law to teach the courses to which they were assigned in the Medical Assistant program.  A sample of those instructors follows below.

30.    L.S. instructed more than 280 students at KHEC's Ingram Campus between September 2009 to May 2011 in courses within the Medical Assistant Program.  KHEC certified that it had "carefully reviewed and verified the qualifications of [L.S.]", when in fact it had not. L.S. listed in his application that he held a Masters of Science degree in Nursing, a Bachelor of Science degree in Nursing, was a Registered Nurse, and an Emergency Medical Technician.  In fact, however, L.S. held no such degrees and credentials, and had no experience in the medical assisting field.  L.S. currently works as a bartender.

31.    D.C. instructed more than 60 students in courses within KHEC's Medical Assistant Program at its Ingram Campus between approximately November 2009 through May 2010.  KHEC falsely certified that D.C. had the requisite credentials to teach classes within the Medical Assistant Program.  D.C. did not even have a high school diploma or its equivalent.

32.    C.C. instructed more than 2,000 students at KHEC's Ingram Campus between 2005 through 2011 in courses within the Medical Assistant Program. KHEC falsely certified that

C.C. had the requisite credentials to teach classes within the Medical Assistant Program. C.C. lacked the required practical experience in any of the courses within the Medical Assistant program. Within the ten years prior to becoming an instructor for KHEC, C.C.'s practical experience consisted of working as a coordinator at a day care center for five years and as an exercise therapist at a chiropractor's office for one and a half years. Completely lacking was any practical experience in the medical assisting field.

33.     K.L. has been employed by KHEC at its Ingram Campus since August 2009. K.L. instructed more than 1,000 students in courses within the Medical Assistant Program. KHEC falsely certified that K.L. had the requisite credentials to teach classes within the Medical Assistant Program. K.L. lacked at least five years experience in the medical assisting field generally and did not have the requisite experience in the particularized fields encompassed by the courses taught, within the ten years prior to his employment with KHEC. And, even though K.L. was unqualified to even teach in the Medical Assistant program, KHEC appointed K.L. as the director of the Medical Assistant program, which included managing instructors and reviewing their qualifications.

34.     B.S. instructed more than 600 students in courses within KHEC's Medical Assistant Program at its Ingram Campus between September 2008 and March 2011. KHEC falsely certified that B.S. had the requisite credentials to teach classes within the Medical Assistant Program when, in fact, B.S. lacked the required practical experience in any of the courses within the Medical Assistant program. Within the ten years prior to becoming an instructor for KHEC, B.S.'s practical experience consisted of working as a laboratory technician. Completely lacking was any practical experience in the medical assisting field.

35.    S.B. instructed over 600 students in courses within KHEC's Medical Assistant Program at its Ingram Campus between September 2008 and March 2011.  KHEC falsely certified that it had verified S.B.'s qualifications to teach courses within the Medical Assistant Program.  In fact, however, S.B. lacked the required practical experience in any of the courses within the Medical Assistant program.  Although S.B. did work as a medical assistant within the ten years prior to her employment at KHEC, her total experience was only two years.  Consequently, S.B. did not have the requisite five years experience necessary to qualify her to teach any courses in the Medical Assistant program.

36.    These five, legally unqualified instructors alone, collectively taught more than 4,500 students in the Medical Assistant program for which KHEC charged each student approximately $2,000 per course.  These five instructors, however, represent a small sampling of the many unqualified instructors KHEC has used to fraudulently generate Title IV income.

## VI.    KHEC DEMANDS AND RECEIVES TITLE IV FUNDS FOR COURSES TAUGHT BY UNQUALIFIED INSTRUCTORS.

37.    Although these instructors did not possess the minimum qualifications to teach courses in the Medical Assistant program, unsuspecting students were charged tuition for courses taught by the instructors.  And, although it was not entitled, KHEC presented claims for payment under Title IV programs to the DOE and the students.

38.    For example, KHEC matriculated L.C. for the Medical Assistant program at its Ingram Campus in October 2010.  L.C. qualified for student financial aid under several Title IV programs, including the Federal Pell Grant Program, 20 U.S.C. §§ 1070a *et seq.*, 34 C.F.R. § 690 and the Federal Direct Student Loan Program, 20 U.S.C. §§ 1087a *et seq.*, 34 C.F.R. § 685.  The federal Government, through the DOE, transferred $2,900 to KHEC under the Pell Grant program and transferred $3,485 (subsidized), $2,000 (unsubsidized), and $6,427 (Plus program)

to KHEC under the Federal Direct Student Loan Program, for a total of $11,732 in Title IV funds demanded and received by KHEC directly from the DOE to pay for L.C.'s tuition.

39.    Every single course taken by L.C. was taught by an unqualified instructor. Courses AHK 102 (Allied Health Industry & Fundamentals) and AHW 102 (Allied Health Careers and Communication) were instructed by K.L., courses MAP 150 (Nervous, Sensory, and Endocrine), MAG 150 (Muskuloskeletal, Digestive, and Respiratory), MAY 150 (Integumentary, Urinary & Reproductive), and MAB 150 (Medical Front Office) were instructed by B.S., and MAR 150 (Circulatory, Immune & Lymphatic) was instructed by L.S.  Despite failing to verify these instructors' qualifications and knowing these instructors were not in fact qualified to teach these courses, KHEC never notified L.C. but nonetheless charged her tuition and received Title IV funds in payment.  L.C. received her diploma in the Medical Assistant program in July 2011.

40.    As another example, KHEC matriculated B.V. for the Medical Assistant program at its Ingram Campus in September 2009.  B.V. qualified for student financial aid under several Title IV programs, including the Federal Pell Grant Program, 20 U.S.C. §§ 1070a *et seq.*, 34 C.F.R. § 690, the Federal Direct Student Loan Program, 20 U.S.C. §§ 1087a *et seq.*, 34 C.F.R. § 685, and the Federal Family Education Loan Program, 20 U.S.C. §§ 1071 *et seq.*, 34 C.F.R. § 682.  The federal Government, through the DOE, transferred $6,275 to KHEC under the Federal Pell Grant Program, transferred $778 (subsidized) and $1,254 (unsubsidized) to KHEC under the Federal Direct Student Loan Program, and guaranteed $3,500 (subsidized) and $5,495 (unsubsidized) received by KHEC under the Federal Family Education Loan Program, for a total of $17,302 in Title IV funds demanded and received by KHEC to pay for B.V.'s tuition.

41.    At least 5 of the 7 courses taken by B.V. were taught by unqualified instructors. Courses AHK 102 (Allied Health Industry & Fundamentals), AHW 102 (Allied Health Careers

and Communication) and MAG 150 (Muskuloskeletal, Digestive, and Respiratory) were instructed by K.L, and courses MAP 150 (Nervous, Sensory, and Endocrine) and MAR 150 (Circulatory, Immune & Lymphatic) were instructed by L.S. Despite failing to verify these instructors' qualifications and knowing these instructors were not in fact qualified to teach these courses, KHEC never notified B.V. but nonetheless charged her tuition and received Title IV funds in payment. B.V. received her diploma in the Medical Assistant program in December 2011.

42.    And, as another example, KHEC matriculated C.R. for the Medical Assistant program at its Ingram Campus in December 2010. C.R. qualified for student financial aid under several Title IV programs, including the Federal Pell Grant Program, 20 U.S.C. §§ 1070a *et seq.*, 34 C.F.R. § 690, and the Federal Direct Student Loan Program, 20 U.S.C. §§ 1087a *et seq.*, 34 C.F.R. § 685. To date, the federal Government, through the DOE, has transferred $4,625 to KHEC under the Federal Pell Grant Program, and transferred $3,292 (subsidized), $2,987 (unsubsidized), and $2,904 (Plus program) to KHEC under the Federal Direct Student Loan Program, for a total of $13,808 in Title IV funds demanded and received by KHEC directly from the DOE to pay for C.R.'s tuition.

43.    At least 5 of the 7 courses taken by C.R. were taught by unqualified instructors. Courses AHK 102 (Allied Health Industry & Fundamentals) and AHW 102 (Allied Health Careers and Communication) were instructed by K.L., and MAG 150 (Muskuloskeletal, Digestive, and Respiratory), MAR 150 (Circulatory, Immune & Lymphatic), MAY 150 (Integumentary, Urinary & Reproductive) and MAB 150 (Medical Front Office) were instructed by C.C. Despite failing to verify these instructors' qualifications and knowing these instructors were not in fact qualified to teach these courses, KHEC never notified C.R., but nonetheless

charged her tuition and received Title IV funds in payment.  C.R. is still enrolled in KHEC's

Medical Assistant program at its Ingram Campus.

## VII. KHEC KNOWINGLY FAILS TO REFUND TITLE IV FUNDS RECEIVED FOR COURSES TAUGHT BY INSTRUCTORS KHEC KNEW WERE UNQUALIFIED.

44.    Relator raised her concerns regarding instructor qualifications to legal counsel for

KHEC, to the qualifications review department for KHEC, and to the President of the Ingram

Campus.  Although KHEC had previously certified that each of its instructors held at least the

minimum legal qualifications, an internal review by KHEC revealed that many of its instructors,

both within and without the Medical Assistant program, were not in fact legally qualified to

teach courses in those programs.  The Director of Education at the Ingram Campus pressured

Relator to alter dates on instructor applications to make the instructors qualified.  When Relator

refused, the Director of Education and others in his department began removing instructor

applications from the instructor files and tampering with the records.  When Relator questioned

whether KHEC planned to refund Title IV funds for courses taught by unqualified instructors,

KHEC's Senior Compliance Officer said that senior management had determined that the

students had received a quality education and that refunds were unnecessary.

45.    Upon information and belief, it is the pervasive and systemic practice of KHEC

across all of its campuses to hire instructors without regard to instructor qualification

requirements and satisfy tuition charges for courses from Title IV funds despite courses being

taught by unqualified instructors, which practice has been acknowledged and ratified at the

highest levels of Defendants' senior management.

## CLAIMS FOR RELIEF

### Count 1

### Violations of 31 U.S.C. § 3729(a)(1)(A)

46.     Plaintiff repeats and re-alleges the allegations in paragraphs 1-45 hereof, as if the same were set forth verbatim.

47.     The False Claims Act, 31 U.S.C. § 3729(a)(1)(A), provides that "any person who knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval" is liable to the United States Government.  A "claim" is defined as "any request or demand . . . for money . . . whether or not the United States has title to the money . . . presented to an officer, employee, or agent of the United States; or made to a . . . grantee, or other recipient, if the money . . . is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government provides or has provided any portion of the money [requested] or will reimburse such . . . grantee, or other recipient for any portion of the money [requested]." *Id.* at (b)(2). "Knowingly" is defined as actual knowledge, or in "deliberate ignorance" or "reckless disregard" of the truth or falsity of the information. *Id.* at (b)(1).

48.     A person who violates 31 U.S.C. § 3729(a)(1)(A) is liable to the federal Government for a civil penalty of up to $10,000 for each false claim, 3 times the amount of damages sustained by the federal Government, along with the costs of a civil action brought to recover such penalties and damages. *Id.* at (a)(1) & (3); 28 C.F.R. § 85.3(a).

49.     Through the acts described above, Defendants and their agents and employees knowingly made false claims to the federal Government and/or to grantees and other recipients of money spent or used on the federal Government's behalf to advance a federal Government

program, which money was provided by the federal Government and/or the repayment of which was guaranteed by the federal Government. Defendants made demand for payment of Title IV funds to the federal Government and/or its students, who were grantees or recipients of Title IV funds, even though Defendants knew or should have known they were not entitled to such funds. Defendants were required by law to verify its instructors possessed minimum qualifications and were not entitled to tuition payments for courses taught by unqualified instructors. Defendants nonetheless failed to verify its instructors' qualifications and, in fact, its instructors were unqualified. Defendants had actual knowledge of and/or acted in deliberate ignorance of or with reckless disregard for the fact that the instructors were unqualified. Defendants nonetheless charged tuition for courses taught by unqualified instructors and made demand for payment to the federal Governments and/or to its students and, in fact, received Title IV funds in payment. The federal Government has suffered damages and continues to suffer damages as a result.

50.    Further, and in the alternative, through the acts described above, Defendants knowingly made false claims to the federal Government by falsely certifying to the federal Government that it was eligible to participate in Title IV programs. The federal Government relied on Defendants' state license and program approvals that were secured through knowingly false certifications to the State of Texas that Defendants' were in compliance with state refund requirements. The TWC would not have approved Defendants' annual renewals of authority to operate in Texas had it known that Defendants systematically hired unqualified instructors, falsely certified the instructors' qualifications, and disregarded state refund requirements. Each request for Title IV funds, when Defendants' were not eligible to participate in Title IV programs, constitutes a false claim presented to the federal Government. The federal Government has suffered damages and continues to suffer damages as a result.

## Count 2

## Violations of 31 U.S.C. § 3729(a)(1)(D)

51.     Plaintiff repeats and re-alleges the allegations in paragraphs 1-50 hereof, as if the same were set forth verbatim.

52.     The False Claims Act, 31 U.S.C. § 3729(a)(1)(D), provides that "any person who has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all that money or property" is liable to the United States Government.

53.     A person who violates 31 U.S.C. § 3729(a)(1)(D) is liable to the federal Government for a civil penalty of up to $10,000 for each false claim, 3 times the amount of damages sustained by the federal Government, along with the costs of a civil action brought to recover such penalties and damages. *Id.* at (a)(1) & (3); 28 C.F.R. § 85.3(a).

54.     Through the acts described above, Defendants and their agents and employees have possession of money used or to be used by the federal Government and knowingly failed to deliver all of that money. Defendants received Title IV funds they were not entitled to keep and were required to refund to its students. Defendants were required by law to verify its instructors possessed minimum qualifications and were required to refund tuition for courses taught by unqualified instructors. Defendants nonetheless failed to verify its instructors' qualifications and, in fact, its instructors were unqualified. Defendants had actual knowledge of and/or acted in deliberate ignorance of or with reckless disregard for the fact that the instructors were unqualified. Defendants nonetheless charged tuition for courses taught by unqualified instructors and received Title IV funds in payment. Defendants knowingly failed to refund Title IV

payments for tuition charged for courses taught by unqualified instructors. The federal Government has suffered damages and continues to suffer damages as a result.

## Count 3

### Violations of 31 U.S.C. § 3729(a)(1)(G)

55.    Plaintiff repeats and re-alleges the allegations in paragraphs 1-54 hereof, as if the same were set forth verbatim.

56.    The False Claims Act, 31 U.S.C. § 3729(a)(1)(G), prohibits a person from knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money to the federal Government. The term "obligation" means an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment. *Id.* at (b)(3).

57.    A person who violates 31 U.S.C. § 3729(a)(1)(G) is liable to the federal Government for a civil penalty of up to $11,000 for each false claim, 3 times the amount of damages sustained by the federal Government, along with the costs of a civil action brought to recover such penalties and damages. *Id.* at (a)(1) & (3); 28 C.F.R. § 85.3(a).

58.    Through the acts described above, Defendants and their agents and employees knowingly and improperly avoided an obligation to pay or transmit money to the federal Government. Defendants received Title IV funds that they were not entitled to keep and were required to return to the federal Government. Defendants were required by law to verify its instructors possessed minimum qualifications and were required to refund tuition for courses taught by unqualified instructors. Defendants nonetheless failed to verify its instructors' qualifications and, in fact, its instructors were unqualified. Defendants had actual knowledge of

and/or acted in deliberate ignorance of or with reckless disregard for the fact that the instructors were unqualified. Defendants nonetheless charged tuition for courses taught by unqualified instructors and received Title IV funds in payment. Defendants knowingly failed to refund Title IV payments for tuition charged for courses taught by unqualified instructors. The federal Government has suffered damages and continues to suffer damages as a result.

### Count 4

### Violations of 31 U.S.C. § 3729(a)(1)(C)

59.     Plaintiff repeats and re-alleges the allegations in paragraphs 1-58 hereof, as if the same were set forth verbatim.

60.     The False Claims Act, 31 U.S.C. § 3729(a)(1)(C), prohibits a person from conspiring to commit a violation of § 3729(a)(1)(A), (B), (D), (E), (F), or (G). A person who violates 31 U.S.C. § 3729(a)(1)(C) is liable to the federal Government for a civil penalty of up to $11,000 for each false claim, 3 times the amount of damages sustained by the federal Government, along with the costs of a civil action brought to recover such penalties and damages. *Id.* at (a)(1) & (3); 28 C.F.R. § 85.3(a).

61.     Through the acts described above, Defendants and their agents and employees conspired to commit violations of § 3729(a)(1)(A), (D), and (G). Upon information and belief, senior level management within each of the Defendant's respective organizations knew that KHEC made demand for and charged students tuition for courses taught by unqualified instructors, knew that money used to pay for such tuition was spent or used by and/or on the federal Government's behalf to advance a federal Government program (namely, programs under Title IV), which money was provided by the federal Government and/or the repayment of which was guaranteed by the federal Government, knew that KHEC had possession of money used or

to be used by the federal Government spent to pay for students' tuition, and knew that KHEC had failed to deliver and/or return all of that money. Upon information and belief, Defendants conspired to receive and retain funds supplied by the federal Government under false pretenses in violation of the False Claims Act. The federal Government has suffered damages and continues to suffer damages as a result.

*Prayer*

WHEREFORE, PREMISES CONSIDERED, Plaintiff/Relator Leslie Coleman prays that upon issuance and service of summons, and trial of this cause, the Court enter judgment against Defendants and grant her all relief available under the False Claims Act, including but not limited to statutory penalties at the maximum amount allowed by law for each false claim, actual damages, trebled damages, and attorney's fees and costs, and all other relief, at law or equity, to which Plaintiff/Relator Leslie Coleman is justly entitled.

Respectfully submitted,

_____
Roy Barrera III
State Bar No. 24028545
Shawn C. Golden
State Bar No. 24038922

**GOLDEN & BARRERA**
424 East Nueva
San Antonio, Texas 78205
Telephone:  (210) 244-5858
Facsimile:  (210) 224-5890

Dan L. Hargrove
State Bar. No. 00790822

**WATERS & KRAUS, LLP**
The Vogue Building
600 Navarro St., #500
San Antonio, Texas 78205
Telephone:  (210) 349-0515
Facsimile:  (210) 349-3666

**Attorneys for Relator**

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2012, a copy of the above and foregoing was served pursuant to Federal Rule of Civil Procedure 4(i) by sending a copy of the summons and of the Complaint to the following:

The Honorable Eric Holder Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

Mr. Robert Pittman
United States Attorney
Attention: Civil Process Clerk
United States Attorney's Office
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216

Respectfully submitted,

Shawn C. Golden
State Bar No. 24038922